**UNITED STATES of America,**

v.

**Sylvester MATTOX, Defendant.**

**No. S76 Cr. 194.**

United States District Court,
S. D. New York.

July 22, 1976.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for United States of America; Harry C. Batchelder, Jr., Asst. U. S. Atty., New York City, of counsel.

Nicholas E. Caprio, East Orange, N. J., for defendant.

---

## OPINION

FRANKEL, District Judge.

Defendant has pled guilty to two major federal offenses:

(1) participation in a narcotics conspiracy carrying a maximum penalty of 15 years in prison and a $25,000 fine, and

(2) income tax evasion, carrying a maximum penalty of one year in prison and a $10,000 fine.

The plea thus exposed defendant to a theoretically possible maximum sentence of 16 years in prison and $35,000 in fines. The court has today suspended the imposition of sentence and placed the defendant on probation for a period of three years. It may be useful for general understanding to explain the basis of this judgment.

There is no question about the gravity of defendant's crimes, especially the narcotics offense. He was one of several participants in a conspiracy involving a large-scale wholesale and retail business in heroin and cocaine. The defendant's role, however, as shown by his guilty plea and the Government's submissions, was relatively minor, evidently limited to a single transaction. Although less serious in some respects, his failure to file an income tax return in a year in which he realized some $24,000 in gross income cannot be regarded as a technical offense. In this case, however, factors other than the nature of the crimes seem decisively important in determining the sentence.

The events to which defendant has pled occurred in early 1971. In July of that year, the defendant was kidnapped (perhaps in connection with his criminal involvements), subjected to various brutalities, and finally injured desperately when he jumped from a second-story window in an effort to escape. Since that episode, he has been a paraplegic confined to a wheel chair. He has been in and out of various hospitals, including veterans' hospitals (being an honorably discharged veteran of combat in the Viet Nam War). He lacks normal control over the simplest bodily functions, relying upon a urinary catheter and other devices to live through the successive days. The contrast with normalcy may be especially severe for a young man of 30 who is reported to have been notably athletic before his paralysis.

Despite his impairments, defendant appears to be economically self-sustaining through a combination of Veteran's pension funds, receipts from rental property, and earnings from self-employment. Though he lives in a condition of physical torment, he appears to maintain decent spirits and positive social relationships.

It is of further significance that while this defendant pled guilty at the end of the fourth day of a nine-day multi-defendant trial, the other defendants, his alleged co-conspirators, were all acquitted by the jury. Those acquittals are conclusive as to the others. For this defendant, however, on what both he and the Government place before us, we are compelled to know that the things he confesses make him a minor figure compared to several who have gone scot free. We are likewise forced to see with substantial certainty that his fate at the jury's hands would not have been different from that of the others.

In lawyers' logic, the knowledge of what might have been could be immaterial. It cannot be immaterial while sentencing remains, as entitled in a useful book, a "human process." *

How, then, should a sentence be fashioned in such a case? The crimes, as noted, are serious. The narcotics offense particularly is deemed by the Congress and by the public to be among the gravest. We regularly order imposing sentences for dealings in heroin. It is hoped that potential violators will be deterred (that there will in the standard term be "general deterrence") as a result of these long prison terms. We strive also for "specific deterrence"—to discourage the particular defendant from doing it again. A related objective is "incapacitation;" at least while he or she is

* See J. Hogarth, Sentencing as a Human Process (1971).

locked up, the defendant will not deal in heroin, not in the streets at all events. Sometimes we speak of "rehabilitation," the notion that prison will improve the defendant, a notion less and less accepted as we learn more about what really happens to people in prison. In addition, punishment serves more or less the ends of retribution and denunciation—making the defendant "pay" and reaffirming the community's outrage against the behavior in question.

Of the several possible ends to be served by imprisonment, three at most could be sought in this case; general deterrence, retribution, and denunciation. We face the question as to how well they would be served and what price we would pay.

It is interesting, and permissible for general enlightenment, to report how two professional agencies react to that problem. Our Probation Office, unsentimental and accustomed to proposing severe sentences for narcotic offenders, concludes that this is not on balance a case for imprisonment; it recommends a long period of probation. Though our United States Attorney prefers usually to stand mute on questions of sentencing, he is asked in some cases to make a recommendation. Needing all possible light in this unusual case, the court made such a request. The resulting recommendation is a thoughtful one. It suggests the probability that the transaction here involved was not defendant's sole involvement with narcotics. On the other hand, it says:

> "the Government is mindful of the special circumstances presented by the defendant's physical condition, and of the fact that the transaction to which he allocuted was never completed. Further, the defendant * * * has no prior criminal record.
>
> "Considering all these factors, [though not the acquittal of all the others,] the Government recommends that the defendant be sentenced to a term of six months incarceration."

The court has considered carefully the arguments for and against that relatively lenient proposal. It seems evident that nobody would be disposed to adjudge one of our frequent, robust narcotics sentences upon this defendant. Imprisonment for six months, less "good time," would still be a stern reminder that the law is relentless toward this type of crime. In that sense, it would tend perhaps to serve the three goals already noted.

But the negative impacts comprise a far more imposing picture. Wheeled into prison, though seemingly "incapacitated" without that for further crimes, and requiring attendance hour by hour for physical survival, the defendant's presence would tell his fellow inmates that the law is not merely relentless, but remorseless, implacable, and without mercy. It would teach the same lesson to all others who knew of the sentence. The "price" defendant would pay would entail his being cared for in some special facility rather than arranging for care through his own resources. The arrangements he has contrived for self-sufficiency would be interrupted, possibly destroyed. The small measure of freedom his wheel chair allows would be abridged, more than he would desire, far less than it can be for others who are less grievously impaired. He would know for certain that he is an enemy, to be shown no quarter. The irony that his fellow conspirators (according to his confession) are free could not be lost on him. His response to his treatment may be imagined.

And what of the response of others? A society that sets an example of naked, pitiless vengeance will not promote respect for the law or compliance with the law's dictates. The line between sternness and cruelty cannot be seen with mathematical precision. It must be espied by whatever light we can find. When the balance is uncertain, our law, like our professed morality, tells us to err on the side of mercy. See *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

Balancing everything, the court has reached the result stated at the outset. It may be of interest to consider this case in thinking about recurrent proposals for mandatory minimum sentences. Despite all the experience counseling against such provi-

sions, they are in fashion—here and there in force—once again. Under most such proposals or enactments, the sentence adjudged today would be impossible. So would the six-month sentence proposed by the Government. This court has, of course, imposed very long sentences, ranging toward 20 years, for narcotic offenses that sound on paper exactly like the one now considered. But the abstraction and the variable reality are not the same. Unless the power to discriminate is left somewhere, the criminal law tends to produce monstrosities. The power has been exercised imperfectly, to be sure, by the judges, as it would be by anyone under principles only dimly stated insofar as our law states them at all. There is a need for clearer, more uniform, more humane standards. But there will remain always a need for judgment.

The judgment in this case is that imposition of sentence is suspended and defendant is placed on probation for a period of three years, subject to the standing probation order of this court.